621 So.2d 499 (1993)
STATE of Florida, Petitioner,
v.
Jamie Lee WALLER, Respondent.
No. 92-03631.
District Court of Appeal of Florida, Second District.
June 30, 1993.
James T. Russell, State Atty., and Michael Marr, Asst. State Atty., Clearwater, for petitioner.
*500 Robert L. Doyel and Jack C. Wilkins, III, Bartow, for respondent.
ALTENBERND, Judge.
The state seeks a writ of common law certiorari to review an order of the circuit court rendered in an appeal from a county court proceeding. We grant the petition.
On April 13, 1989, at approximately 10 p.m., undercover officers from the Clearwater Police Department went to Sweethearts Lounge. According to the officers, Jamie Lee Waller was employed as a dancer at this lounge. She was wearing a Tback bikini. She escorted one of the officers to a chair in a location away from the main seating area and performed a "private lap dance" for several minutes in exchange for five dollars. During this activity, she allegedly simulated sexual intercourse and rubbed various parts of her anatomy against the fully clothed officer's genital area.
Ms. Waller was arrested and charged with a violation of section 796.07(3)(a), Florida Statutes (1989). While this statute is often invoked concerning the crime of prostitution, it also makes it a misdemeanor for a person to "engage in ... lewdness." The statute defines lewdness as "any indecent or obscene act." § 796.07(1)(b), Fla. Stat. (1989).
In county court, Ms. Waller filed a motion to dismiss pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). In the motion and in the accompanying memorandum, she argued that her conduct, as a matter of law, did not fall within the definition of "lewdness." Her argument was based upon the discussions of lewdness in Campbell v. State, 331 So.2d 289 (Fla. 1976); Chesebrough v. State, 255 So.2d 675 (Fla. 1971), cert. denied, 406 U.S. 976, 92 S.Ct. 2427, 32 L.Ed.2d 676 (1972); and Egal v. State, 469 So.2d 196 (Fla.2d DCA), review denied, 476 So.2d 673 (Fla. 1985). We note that she did not contend her actions were protected by the First Amendment.
The county court entered a lengthy order granting the motion to dismiss under the analysis in Campbell, Chesebrough, and Egal. It concluded that the defendant's alleged conduct at the time, place, and under the circumstances, could not permit a jury in Pinellas County, applying the then-existing moral and social values, to find the defendant guilty of engaging in lewdness. The county court declined to apply the First Amendment analysis of obscenity announced in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), because the defendant had not argued that her conduct was a protected art form.
The state appealed that order of dismissal to the circuit court, which reversed the order and remanded the case to county court with instructions concerning the law applicable to this case. The state is pleased with the order of reversal, but maintains the circuit court departed from the essential requirements of the law because it ordered the county court to use an incomplete definition of "lewdness," and to apply a First Amendment analysis of obscenity when no First Amendment issue had been presented to the county court.
Ms. Waller has not sought review of the circuit court order. Nevertheless, we note our agreement with the circuit court that the determination of lewdness in this case is not a matter for resolution on a motion to dismiss. There are circumstances in which a judge may dismiss such charges. See Campbell, 331 So.2d at 290. In this case, however, the evidence before the trial court on the motion to dismiss did not eliminate a jury question. We do not foreclose the possibility that the trial court could properly dismiss this action at a later stage in these proceedings. We note, however, that this court has expressly affirmed an administrative determination that lap dancing in this same lounge was lewd for purposes of section 796.07(2)(a), Florida Statutes. Hoskins v. Department of Business Regulation, 592 So.2d 1145 (Fla.2d DCA), review denied, 601 So.2d 552 (Fla. 1992).
On the other hand, we conclude that the circuit court erroneously instructed the county court to employ an incorrect definition of "lewdness." The circuit court explained that Campbell, Chesebrough, and *501 Egal involved prosecutions under statutes other than section 796.07. It stated that the county court erred in relying upon those cases for the definition of "lewdness." It ruled the county court was obligated to limit its analysis of "lewdness" to the definition in section 796.07(1)(b). At least implicit in this order is an instruction to the county court that it not rely on precedent defining or explaining the concept of indecency. Because the statutory definition uses the word "obscene," the circuit court also concluded that the county court on remand must apply the Miller three-prong test for obscenity.
A brief discussion of the earlier cases is warranted. In Campbell, the defendant was convicted under section 798.02, Florida Statutes, which proscribes "open and gross lewdness and lascivious behavior." As observed by the supreme court, that concept is defined by case law as conduct which is "extremely indecent, immoral and offensive." 331 So.2d at 290. The supreme court recognized that the term "indecent" is difficult to define and concluded that the term "extremely indecent" must refer to an act more outrageous than that committed by Mr. Campbell. Id. In so doing, the court considered the time, place, and circumstances of the relevant act. Id.
In Chesebrough and Egal, each defendant was convicted of a lewd and lascivious act in the presence of a child under section 800.04, Florida Statutes. In Chesebrough, the supreme court defined "lewdness" as
the unlawful indulgence of lust, signifying that form of immorality which has a relation to sexual impurity. It is generally used to indicate gross indecency with respect to the sexual relations... .
The words "lewd" and "lascivious" behavior when used in a statute to define an offense has been held to have the same meaning, that is, an unlawful indulgence in lust, eager for sexual indulgence.
255 So.2d at 677.
In Chesebrough the supreme court relied on an earlier statement in Boles v. State, 158 Fla. 220, 27 So.2d 293 (1946), that "lewd," "lascivious," and "indecent" connote "wicked, lustful, unchaste, licentious, or sensual design on the part of the perpetrator." Chesebrough, 255 So.2d at 677 (quoting Boles v. State, 158 Fla. at 221, 27 So.2d at 294). Egal followed Chesebrough and noted that since the legislature had not defined "lewd and lascivious," it was the task of the judiciary to apply those words based upon a common understanding. Egal, 469 So.2d at 197.
In Schmitt v. State, 590 So.2d 404 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992), the supreme court reviewed the constitutionality of section 827.071, Florida Statutes (1987), which proscribes sexual performances by children. Although the court held a portion of that statute to be unconstitutional, it determined that it could sever the offending portion of the statute, in part, because of the sufficiently narrow meaning of "lewd" under Florida's common law. 590 So.2d at 415. Relying upon Chesebrough, the court stated: "Under Florida criminal law the terms `lewd' and `lascivious' are synonymous: Both require an intentional act of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others." 590 So.2d at 410 (footnotes omitted).
The Florida Standard Jury Instructions in Misdemeanor Cases for use in actions involving section 796.07 define "lewdness" with language derived from both the statute and Campbell and Chesebrough. The instructions do not contain any Miller analysis. The state is concerned that the circuit court order may have the effect of invalidating these instructions at least in this case.
When the legislature in 1943 defined "lewdness" as "indecent or obscene" for purposes of section 796.07, it did not suggest that it intended a narrower definition than the common understanding courts have employed to explain that term as a crime involving the concept of indecency. Although section 796.07 has been amended on several occasions, the legislature has continued to define lewdness in terms of either indecency or obscenity. Thus, a jury *502 could find that an act is lewd because it is indecent, even though they would not necessarily be convinced that it is obscene. To the extent that the circuit court instructed the county court to ignore precedent which helps to define "indecency" as one aspect of "lewdness," we conclude it departed from the essential requirements of the law.
The circuit court's mandate that the county court apply the analysis of obscenity in Miller is, at best, premature. In Miller, the Supreme Court addressed the constitutionality of a state statute regulating the sale or distribution of obscene matter. In Miller, the allegedly obscene matters were brochures that contained very explicit drawings depicting sexual activity. The Supreme Court recognized that obscene materials could be regulated by the states, but imposed three tests to assure that such regulation would not violate the First Amendment. Those tests require an analysis of: (1) whether an average person, applying contemporary community standards, would find that the material appealed to the prurient interest; (2) whether the materials depict sexual conduct in a patently offensive way; and (3) whether the work, as a whole, lacks serious literary, artistic, political, or scientific value. 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.
The Supreme Court has stated recently that barroom nude dancing "may involve only the barest minimum of protected expression ... that might be entitled to First and Fourteenth Amendment protection under some circumstances." Barnes v. Glen Theatre, Inc., 501 U.S. ___, ___, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504, 511 (1991) (quoting earlier cases). At this point, however, Ms. Waller has yet to maintain that this private lap dance is speech protected by the First Amendment. Not every act that is obscene is also speech. We have expressly rejected an argument that similar dancing in the same lounge was protected by First Amendment for purposes of an administrative hearing in which a liquor license was revoked. Hoskins, 592 So.2d at 1146. We have not been directed to any precedent requiring First Amendment protection for such private activity with one customer on the edge of a dimly lighted room, as compared to dances performed on stage to entertain a group of customers. See generally Erwin S. Barbre, Annotation, Topless or Bottomless Dancing or Similar Conduct as Offense, 49 A.L.R.3d 1084 (1973) (discussing nude dancing as public offense); People v. Better, 33 Ill. App.3d 58, 337 N.E.2d 272 (1975) (discussing standards to determine whether nude dancing is protected expression).
We do not rule out the possibility that Ms. Waller's conduct in this case is protected by the First Amendment. If she raises this issue in county court and that court determines the First Amendment applies to these activities, then the circuit court is correct, and the issue of lewdness in this case should be analyzed to include the Miller three-prong test. Such analysis, however, cannot be mandated at this time by the circuit court in its appellate capacity.
Petition for writ of certiorari granted.
FRANK, C.J., and DANAHY, J., concur.